## El Pueblo *v.* Robles.

Apelación procedente de la Corte de Distrito de Humacao.

No. 120.—Resuelto en diciembre 13, 1907.

Nuevo Juicio—Insuficiencia de la Prueba para Justificar el Veredicto.—
En los casos en que el único motivo de impugnación contra el fallo de convic-
ción consista en la insuficiencia de la prueba para justificarlo, la mejor prác-
tica es la de solicitar un nuevo juicio ante la corte inferior.

Pruebas—Cómplices—Corroboración de su Declaración.—Un testigo que haya
sido procesado juntamente con el acusado, y convicto del mismo delito que á
éste se le imputa, tiene el concepto de cómplice, á los efectos del artículo 253
del Código de Enjuiciamiento, y como tal, su declaración tiene que estar corro-
borada con alguna otra prueba que por sí mismo tienda á relacionar al acusado
con la comisión del delito, sin que esa prueba corroborante sea suficiente
cuando tienda á establecer simplemente la existencia del *corpus delicti.*

Id.—Prueba Circunstancial.—No es necesario que la prueba corroborante sea
directa, pues bien puede ser circunstancial, siempre que demuestre la cul-
pabilidad del acusado, ó sea suficiente para *relacionarlo con la comisión del
delito.*

Id.—Si la prueba corroborante tiende solamente á levantar una sospecha en con-
tra de la inocencia del acusado, dicha prueba no es suficiente para justificar
su convicción.

Apelación—Pruebas—Veredicto—Nuevo Juicio.—Si las pruebas practicadas en
el juicio no fueren suficientes para justificar el veredicto de culpabilidad, la
sentencia apelada debe revocarse y decretarse la celebración de un nuevo
juicio.

Los hechos están expresados en la opinión.

Abogado del apelado: *Sr. Rossy, Fiscal.*

La parte apelante no compareció.

El Juez Asociado Sr. MacLeary, emitió la opinión del
tribunal.

El presente proceso fué instituído contra Candelario
Robles, Antonio Rivera y Eusebio Vicente, por el delito de
escalamiento en primer grado. En la acusación se alega que
en la noche de junio 4 de 1907, en el pueblo de Juncos, los tres
individuos mencionados entraron forzosamente en la tienda
de Quiterio López, y le robaron dinero y otros efectos. Los
acusados Robles y Rivera, fueron juzgados separadamente.
Parece que Vicente se halla todavía en libertad, como pró-

fugo de la justicia. Rivera, que había sido anteriormente procesado y declarado culpable, declaró como testigo de cargo contra Robles, en el juicio. El jurado pronunció su veredicto el 6 de agosto último, declarando culpable al acusado, de acuerdo con la acusación. El día 8 del mismo mes, la corte dictó sentencia condenando al acusado Robles, á sufrir diez años de presidio, con trabajos forzados, y al pago de las costas del proceso. El 15 de agosto último pasado, se interpuso apelación para ante este tribunal, contra la sentencia condenatoria. y el acusado pide la revocación de la sentencia, y que se le conceda un nuevo juicio.

En la corte inferior no se presentó moción alguna, pidiendo nuevo juicio; si se hubiese pedido, es probable que se hubiera concedido. Esta es siempre la mejor práctica en casos criminales, cuando la insuficiencia de la prueba para justificar un veredicto de culpabilidad, es la única materia de que se queja.

La única cuestión que surge en este recurso, es la suficiencia de la corroboración ofrecida á la declaración de Antonio Rivera, el testigo principal de cargo. El artículo 253 del Código de Enjuiciamiento Criminal, á la letra, dice lo siguiente:

"No procede la convicción por declaración de un cómplice, á no ser que ésta sea confirmada por alguna otra prueba que, por si misma y sin la ayuda del testimonio del cómplice, tienda á demostrar la relación del acusado con la comisión del delito; no siendo suficiente dicha corroboración si solo prueba la perpetración del delito ó las circunstancias del mismo."

No cabe duda de que el testigo Rivera queda comprendido dentro de la categoría de un cómplice, según las disposiciones de la ley de evidencia.

El artículo de nuestro Código de Enjuiciamiento Criminal antes citado, es lo mismo que el 1111 del Código Penal de California, habiendo sido reproducido de dicho Código, y, por supuesto, nosotros podemos buscar interpretaciones da-

El Pueblo _v._ Robles. 311

das á dicho artículo por el Tribunal Supremo del referido Estado, y seguirlas como hemos hecho frecuentemente en tales casos.

En uno de los casos de California, el juez sentenciador dió las siguientes instrucciones al jurado, á saber:

"Cuando varios individuos han cometido un delito, si uno de ellos se presta pára servir como testigo de cargo, y declara respecto á las circunstancias, bajo las cuales se cometiera el supuesto delito, no puede declararse culpable á ninguno de los que hayan tomado parte en la comisión del mismo, por virtud de la declaración del cómplice, á menos que existan otras pruebas además de su declaración, que tiendan á relacionar al acusado con la comisión del delito, y dicha relación no es suficiente si no hace más que demostrar el delito ó las circunstancias del mismo.

"Siempre que el fiscal presente prueba que tienda á relacionar al acusado con la comisión de un delito dado, entonces el jurado puede, y debe tomar en consideración el testimonio del cómplice, con el fin de determinar si el acusado es ó no culpable de dicho delito; pero esta prueba, si tiende á demostrar la relación del acusado con la comisión del supuesto delito, debe ser prueba que verse sobre materias distintas de aquellas que demuestren el hecho mismo de la comisión del delito, y las circunstancias lo rodean."

El Tribunal Supremo de California dice lo siguiente:

"Pero el artículo 1111 del Código Penal, no requiere que la prueba corroborativa seá tal que demuestre que el cómplice haya dicho la verdad; tampoco declara que ha de presumirse que ha jurado falsamente, cuya presunción quedará destruída solamente en el caso de que las otras pruebas demuestren que ha dicho la verdad. Además de su declaración, por digna que sea de creencia, para justificar un veredicto de culpabilidad, requiere simplemente que exista prueba tendente á relacionar al acusado con la comisión del delito. Por supuesto, prueba solamente del _corpus delicti_ no es tal prueba."

_People_ v. _Clough,_ 73 Cal., 349, 350, 351 y 352.

También podremos hacer referencia á los siguientes casos:

_People_ v. _Main,_ 114 Cal., 632.

_People_ v. _Smith,_ 98 Cal., 218.

*People* v. *Cleveland,* 49 Cal., 577.

*People* v. *Ames,* 39 Cal., 403.

*People* v. *Garret,* 29 Cal., 642.

Somos de opinión que las resoluciones de California explican la ley correctamente, y debían seguirse en la interpretación de esta ley.

No se encuentra en los autos ninguna declaración directa que relacione al apelante con la comisión del delito, excepción hecha de la de Rivera. La prueba corroborativa es puramente circunstancial. No es necesario que la declaración de un testigo cómplice sea corroborada por un testigo que haya presenciado la comisión del delito. La prueba circunstancial puede servir como corroboración, si demuestra la culpabilidad del acusado, ó si es suficiente para demostrar la relación del acusado con la comisión del delito. Respecto á testimonio corroborativo, podemos decir lo mismo que dijo el juez sentenciador al informar al jurado á petición del abogado del demandado:

"Si esa prueba no hace más que crear sospechas, es prueba insuficiente para corroborar la declaración sola del cómplice. La declaración sola del cómplice no es suficiente; no es necesario que se corrobore cada dicho, cada hecho testificado por el cómplice, pero si la prueba corroborativa tiende á relacionar al acusado con la comisión del delito, es suficiente; si no hace más que crear sospechas respecto al acusado, no es suficiente."

Estas instrucciones fueron dadas al jurado en cumplimiento de la petición del abogado defensor, para que el juez diera instrucciones al jurado, respecto á los requisitos que debe tener la prueba circunstancial para que se pueda tomar en consideración, al pronunciar un veredicto. Aunque es muy condensada, es sustancialmente correcta.

Esta proposición está expresada en el sumario de una de las resoluciones de California, en la siguiente forma:

"La prueba corroborativa necesaria para demostrar la culpabili-

dad de un acusado, además de la declaración de un cómplice, no es su-
ficiente si tiende solamente á producir sospechas respecto á la culpabi-
lidad del acusado."

*People* v. *Thompson,* 50 Cal., 480; *People* v. *Koenig,* 99 Cal., 574;
*People* v. *Ames,* 39 Cal., 403.

Este sumario es sustancialmente lo mismo que la instruc-
ción dada por el juez sentenciador, en el caso de autos, á peti-
ción del acusado, que en este recurso es el apelante. En las
instrucciones dadas al jurado, no existe falta suficiente para
justificar la revocación de la sentencia dictada en contra del
acusado.·

Ahora examinemos la prueba presentada en el juicio. Al
examinar la exposición de los hechos, erróneamente designada
en el alegato del apelante, "relación del caso," encontramos
que las únicas circunstancias corroborativas de la declaración
de Rivera, son las que relacionan los testigos de cargo, como
sigue:

"Quiterio López, amo de la tienda que fué objeto del escalamien-
to dice: que como á las dos ó las tres de la mañana del 4 de junio últi-
mo, fué avisado por la policía de que le habían escalado la tienda del
declarante en Juncos; y fué allí, y encontró los dependientes, y observó
que le habían llevado el baúl y le faltaba una cantidad de $165 á $170
que tenía en dinero; que fué al cuartel de la policía, y allí encontró un
caballo en el que montó y salió fuera del pueblo en busca de los que le
habían escalado; y, cuando regresaba, encontró á Antonio Rivera, que
tenía una chaqueta del declarante y lo cogió, encontrándole $35.70.

"Que el declarante estuvo en la tienda como á las dos, fué á la Ma-
rina á dar una vuelta y al volver el guardia, le dijo que le habían esca-
lado la tienda; que no sabe á qué hora se forzó la puerta para penetrar
los ladrones en su tienda; que la última vez que vió el baúl el decla-
rante, fué cuando cerró y se fué para la calle á las diez de la noche;
que la tienda quedó cerrada, y cuando el que declara regresó, en-
contró que le habían escalado y habían abierto la puerta de atrás, y ha-
bían salido por la de adelante, con el baúl. ·Que el baúl lo tenía ya en
su poder, que le ha sido entregado por el Sr. Juez."

"José Arzuaga, Juez de Paz, dice:

"Que es vecino de Juncos, en donde ejerce el cargo de Juez de Paz;
que conoce á Candelario Robles desde muchacho; que el declarante hi-

zo la investigación por el escalamiento de esta causa; que se constituyó en el juzgado el primer día á investigar la causa y entre los testigos que llamó fué Candelario Robles uno de ellos y declaró que no conocía á los individuos Antonio Rivera y Eusebio Vicente, y que no los había visto nunca; que el declarante siguió la investigación y al otro día, Candelario lo mandó llamar, diciendo que quería declarar la verdad; que entonces el declarante lo mandó traer al juzgado, y allí le dijo al declarante, que efectivamente ellos habían venido el día anterior por la tarde con una carta para Quiterio López, y que él enseñó la carta; que el declarante no acostumbraba prometer algo á los que tienen que declarar, para que lo hagan, y no le prometió nada para ello.

"Que Candelario Robles le dijo que habían traído una carta para Quiterio López, y que querían que él le enseñara la carta y él se la enseñó.

"Que también le manifestó que se había acostado á las diez."

Preguntado por el abogado defensor declaró:

"Que la ampliación de la declaración de Candelario Robles se redujo á decir que se había acostado á las diez de la noche, y que conocía á esos individuos; que esta manifestación la hizo el acusado sin ser llamado por el declarante; esto es, esplícitamente, y le dijo que quería declarar la verdad.

"Victor Maldonado dice:

"Que es vecino de San Lorenzo, viviendo en la actualidad en Juncos, y que está de lector en la Fábrica de Fariña, en Juncos, pero que todos los sábados se va á San Lorenzo.

"Que la noche del 4 de junio, estaba en la casa de Candelario Robles, en cuya casa dormía; que el declarante se acostó á las ocho de la noche; que Candelario Robles llegó por la madrugada; que cuando salieron con los guardias, daban las cuatro de la mañana; que los guardias llevaron al declarante de la casa donde dormía, á la alcaldía.

"Que sintió á Candelario Robles cuando llegó á su casa; que llamó á la señora y le dijo "Julia" y, cuando ella le abrió, él entró; que la policía llegó al cabo rato, y echó por delante á todos los que estaban allí, á la señora, á él, al declarante y al padre de él.

"Que la policía encontró á Candelario en su misma casa; que los guardias lo incomunicaron á él y dejaron fuera al declarante.

"Que cuando llegó Candelario Robles, el declarante no lo vió guardar dinero ni efectos en su casa, y, cuando lo arrestaron, no lo vió sacar nada absolutamente.

"Que el declarante duerme en la misma habitación que Candelario Robles y su señora separados por un telón, ellos en un lado y el declarante en otro."

"Lino Miranda, el Alcaide dice:

"Que es vecino de Juncos, alcaide de la cárcel municipal; que conoce perfectamente á Candelario Robles.

"Que la noche del escalamiento, el declarante estaba en unión del policía Torres en la calle; que llegaron á la esquina de Cándido Rodriguez y notaron que en el establecimiento de Quiterio Quiñones, estaba una puerta completamente abierta y la tranca en la calle; que el policía entró y llamó á los dependientes, y haciéndoles preguntas, si dormían con las puertas abiertas, y que miraran á ver lo que faltaba; buscaron y dijeron que les faltaba el baúl del principal.

"Que esa noche vió á Candelario Robles como á las ocho, que estaba solo. Que esa noche fué cojido Antonio Rivera, y se le ocuparon $35.70, y alguna ropa de la que había en el baúl. Que el guardia Torres arrestó á Antonio Rivera, y después el policía Victor Collazo, trajo á Candelario Robles."

"Pedro Quiñones, panadero, dice:

"Que es vecino de Juncos, que su ocupación es la de panadero; que conoce á Candelario Robles. Que en la noche del 4 de junio estaba el declarante en un velorio que había en casa de Celestino Vega, y Pedro Santana lo convidó á dar una serenata, y salieron los dos como á las diez de la noche y regresaron como á las once; que entre once y media y doce llegó Candelario Robles á la casa donde se encontraba el declarante en una cena que tenía el declarante con Pedro Santana; que el declarante lo invitó, y Candelario no quiso quedarse; que pocos momentos después llegó otro individuo allí con el ala del sombrero echada y dijo que era un quincallero; que dicho individuo se marchó con Candelario, dijeron que se iban á dormir cada uno por distinta parte.

"Que terminada la cena, salió el declarante, y se encontró en la calle con Luis Miranda, el Policía Torres y un tal Lico, y al llegar á la esquina, notó el policía que estaba abierta la puerta de la tienda de Quiterio López y el policía penetró en la casa.

"Que la primera puerta que la policía observó abierta fué la de atrás, y entró por la de alante.

"Que cuando Candelario dijo que se iba á dormir, serían como entre once y once y media de la noche; que este individuo acostumbraba acostarse tarde cuando hay velorios."

"Claudio Torres, el policía que arrestó á Robles, dice:

"Que es vecino de Juncos y conoce á Candelario Robles.

"Que la noche de autos, el declarante estaba de servicio en la población, y notó que en la tienda de Quiterio López estaba la tranca en la calle y la puerta semi-junta. Que el declarante fué quien arrestó á Candelario Robles en su casa, en momentos en que estaba desvistiéndose para acostarse; que todavía tenía los zapatos al pie, y la camisa que tenía estaba sudada, y el cuerpo también. Que Candelario le dijo que se había acostado á las diez de la noche.

"Que no lo incomunicaron ni le pegaron con motivo del arresto. Que cuando encontró á Candelario Robles en su casa, estaba sentado en el catre.; que el declarante llamó antes de afuera, tocó con la macana, y al preguntar de adentro quién llamaba, contestó el declarante: "La Policía," que al entrar, lo encontró sentado en la cama, y á la señora de pie, al lado de él, medio vestida; que el declarante pidió permiso para entrar, y se lo permitieron."

"Rafael Aguayo, cabo de la policía insular,'dice:

"Que es vecino de Juncos, y conoce á Candelario Robles, que es vecino de Juncos. Que el declarante conoce de esta causa por la investigación que hizo como cabo de la policía insular. Que Candelario Robles llamó al declarante al depósito, y le dijo: "Cabo," yo quiero que Vd. me suelte, porque soy inocente, ese muchacho me acusa porque es enemigo mío, pero yo le voy á decir la verdad: Antonio Rivera y Eusebio Segarra fueron los autores del escalamiento, y el mismo día me llamaron á mí, y me preguntaron por la casa de Quiterio López; que también le dijo que estaba dispuesto á ayudar á buscar á Eusebio, donde quiera que estuviera."

Indudablemente que los testigos de la defensa fueron citados para probar la coartada, y sus declaraciones son más bien contradictorias que corroborativas de la que prestó Rivera.

Después de un examen cuidadoso de toda la prueba, no podemos aceptar las circunstancias relacionadas por los varios testigos, considerándolas todas en conjunto, como suficientes para relacionar al demandado con la comisión del delito; pero, en las frases usadas por la corte, al instruir al jurado, las consideramos "prueba que no hace más que crear sospechas" de que el demandado estaba relacionado con el delito cometido. No creemos que el veredicto del jurado fué justificado por la

prueba que se encuentra en los autos; y sólo por ese motivo, debe revocarse la sentencia, y devolverse el caso para que se celebre un nuevo juicio.

*Revocada.*

Jueces concurrentes: Sr. Presidente Quiñones y Asociados, Hernández, Figueras y Wolf.